**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **GARY PREVITO** | § | **PLAINTIFF** |
| | § | |
| **v.** | § | **Civil Action No. 1:08cv177-HSO-JMR** |
| | § | |
| **RYOBI NORTH AMERICA, INC., et al.** | § | **DEFENDANTS** |

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT, GRANTING DEFENDANTS'**
**MOTION FOR PARTIAL SUMMARY JUDGMENT, AND**
**DISMISSING DEFENDANT TECHTRONICS, INC.**

BEFORE THE COURT is the Motion for Summary Judgment [176], and

Motion for Partial Summary Judgment [178], both filed by Defendants One World

Technologies, Inc., and Ryobi Technologies, Inc., on July 15, 2010, and July 16, 2010,

respectively, in the above captioned case. Both Motions are fully briefed. After

consideration of the submissions and the relevant legal authorities, and for the

reasons discussed below, the Court finds that Defendants' Motion for Summary

Judgment [176] should be denied, that Defendants' Motion for Partial Summary

Judgment [178] should be granted, and that all claims raised against Defendant

Techtronics, Inc., should be dismissed.

## I. BACKGROUND

Plaintiff filed his Complaint in the Circuit Court of Harrison County,

Mississippi, First Judicial District, on February 7, 2008, raising state law claims

against Defendants Ryobi North America, Inc., Ryobi Technologies, Inc., Ryobi

Electric Tool Mfg., Inc., One World Technologies, Inc., Techtronics, Inc., Ryobi

Limited, Ryobi Power Tools Co., and XYZ Corporation, for injuries he sustained when

the carbide tip of a power table saw he was using allegedly separated from the saw

and struck him in his eye.  Pl.'s Compl., attached to Defs.' Not. of Removal [1].

Defendant One World removed the case to this Court on May 2, 2008, asserting that

the parties were diverse and that the amount in controversy exceeded $75,000.00,

exclusive of interest and costs, such that this Court had subject matter jurisdiction

pursuant to 28 U.S.C. § 1332.  Not. of Removal [1].

Plaintiff filed an Amended Complaint on May 28, 2008, clarifying, among other

things, that the subject accident occurred on June 9, 2005.  Am. Compl. ¶ 7 [18].  On

July 14, 2010, Plaintiff sought to dismiss his claims against Defendants Ryobi North

America, Inc., Ryobi Electric Tools Mfg., Ryobi Power Tools Co., Ryobi Limited, and

XYZ Corporation. Revised Mot. to Dismiss [173].  By Order dated July 26, 2010, the

Court granted Plaintiff's Motion to Dismiss as unopposed.  Order [187].  Though

Techtronics, Inc., currently remains as a Defendant in this case, as more fully

discussed elsewhere herein, the Court concludes that it was improperly joined and

must be dismissed.  Ryobi Technologies, Inc., and One World Technologies, Inc., are

therefore the only remaining Defendants.

The Amended Complaint advances claims of negligence and strict liability

against Defendants for:

> (a) manufacturing and distributing a defective and unsafe saw and blade;
> (b) distributing and releasing to the public the aforesaid product when
> Defendant knew or should have known it was defective and unsafe; (c)
> failing to properly examine, inspect, and check out the aforesaid product
> prior to releasing same; (d) failure to provide a safe and adequate system
> for quality control over the manufacturing, packaging, and distributing of
> the product; and (e) any other act or omission of negligence or strict

liability which may be shown in discovery or at trial.

Am. Compl. ¶ 8 [18].  Defendants One World and Ryobi now move for summary

judgment on grounds that  Plaintiff understood and appreciated the danger involved

with the power table saw, and therefore assumed the risk under MISS. CODE ANN. §

11-1-63(d).  In the alternative, Defendants move for partial summary judgment on

Plaintiff's defective design and inadequate warning claims under MISS. CODE ANN. §

11-1-63, and on Plaintiff's claim for punitive damages.

## II. DISCUSSION

### A.   Subject Matter Jurisdiction

In the Notice of Removal, One World argues that Defendant Techtronics, Inc.,

a Mississippi corporation, was improperly joined to defeat diversity of citizenship, the

basis for this Court's subject matter jurisdiction over this matter.  Not. of Rem. at p.

1.  "[T]he threshold question for [the Court] is whether 'there is no reasonable basis

for the district court to predict that the plaintiff might be able to recover against an

in-state defendant.'"  *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281 (5th Cir.

2007) (*quoting Smallwood v. Illinois Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir.

2004)).  "[T]he district court may 'pierce the pleadings' and consider 'summary

judgment-type evidence' (e.g., affidavit and deposition testimony) when inquiring

whether a resident defendant has been fraudulently joined."  *Jabour v. Life Ins. Co. of

North America*, 362 F. Supp. 2d 736, 740 (S.D. Miss. 2005) (*citing Ross v.

Citifinancial, Inc.*, 344 F.3d 458, 461 (5th Cir. 2003)).

To establish that Plaintiff has no realistic possibility of recovery against

Techtronics, Inc., One World submitted business filings from the Mississippi Secretary of State website, which reflect that Techtronics, Inc., is in the business of selling and repairing refurbished cellular telephones.  Techtronics, Inc.'s, Filings, attached as Ex. "A" to Not. of Rem.  Based upon this submission, Techtronics, Inc., does not appear to manufacture, distribute, or sell table saws or saw blades, nor does it appear to have any relationship with any of the other named Defendants in this case.

Plaintiff has not filed a Motion to Remand, nor has he otherwise contested removal of this matter.  As a general rule, where a plaintiff fails to contest the petition for removal and never moves for remand, the plaintiff admits allegations concerning questions of fact.  *Bobby Jones Garden Apts., Inc. v. Suleski*, 391 F.2d 172, 175-76 (5th Cir. 1968); *see also Berry v. Hardwick*, No. 1:04cv245, 2004 WL 3092769, at * 2 (N.D. Miss. Nov. 22, 2004).  Based upon the record, the pleadings, the relevant law, and the evidence before the Court, the Court finds that Techtronics, Inc., was improperly joined in this case, and should be dismissed, such that the Court retains diversity jurisdiction over this matter.

B.    Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure states that the judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56.  The purpose of summary judgment

is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Meyers v. M/V Eugenio C.*, 842 F.2d 815, 816 (5th Cir. 1988).

The mere existence of a disputed factual issue does not foreclose summary judgment. The dispute must be genuine, and the facts must be material. *Booth v. Wal-Mart Stores, Inc.*, 75 F. Supp. 2d 541, 543 (S.D. Miss. 1999). With regard to "materiality," it is important to remember that only those disputes of fact which might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment. *Id.* (*citing Phillips Oil Company v. OKC Corp.,* 812 F.2d 265, 272 (5th Cir. 1987)). Where "the summary judgment evidence establishes that one of the essential elements of the plaintiff's cause of action does not exist as a matter of law, . . . . all other contested issues of fact are rendered immaterial." *Id.* (*quoting Topalian v. Ehrman*, 954 F.2d 1125, 1138 (5th Cir. 1987)).

To rebut a properly supported motion for summary judgment, the opposing party must present significant probative evidence, since "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Shields v. Twiss,* 389 F.3d 142,149-50 (5th Cir. 2004) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *Anderson*, 477 U.S. at 249. The nonmovant may not rely on mere denials of material facts, nor on unsworn allegations in the pleadings or arguments and assertions in briefs or legal memoranda. *Gaddis v. Smith & Nephew, Inc.,* 534 F. Supp. 2d 697,

699 (S.D. Miss. 2008).

Because the Court's jurisdiction in this case is premised upon diversity of citizenship, the Court must apply state substantive law.  *Erie R. Co. v. Tompkins*, 304 U.S. 64, 79-80 (1938); *Krieser v. Hobbs*, 166 F.3d 736, 739 (5th Cir. 1999).

> The core of what has become known as the '*Erie* Doctrine' is that the substantive law to be applied by a federal court in any case before it is state law, except when the matter before the court is governed by the United States Constitution, an Act of Congress, a treaty, international law, the domestic law of another country, or in special circumstances, by federal common law.

*Hanley v. Forester*, 903 F.2d 1030, 1032 (5th Cir. 1990).

C.   Motion for Summary Judgment

The Mississippi Products Liability Act (MPLA), MISS. CODE ANN. § 11-1-63, provides that:

> (a) The manufacturer or seller of the product shall not be liable if the claimant does not prove by the preponderance of the evidence that at the time the product left the control of the manufacturer or seller:
>
> (i)     1.   The product was defective because it deviated in a material way from the manufacturer's specifications or from otherwise identical units manufactured to the same manufacturing specifications, or
> 2.   The product was defective because it failed to contain adequate warnings or instructions, or
> 3.   The product was designed in a defective manner, or
> 4.   The product breached an express warranty or failed to conform to other express factual representations upon which the claimant justifiably relied in electing to use the product; and
>
> (ii)    The defective condition rendered the product unreasonably dangerous to the user or consumer; and
>
> (iii)   The defective and unreasonably dangerous condition of the

-6-

product proximately caused the damages for which recovery
is sought.

M ISS. C ODE A NN. § 11-1-63(a).  Subpart (d) provides that:

[i]n any action alleging that a product is defective pursuant to paragraph
(a) of this section, the manufacturer or seller shall not be liable if the
claimant (i) had knowledge of a condition of the product that was
inconsistent with his safety; (ii) appreciated the danger in the condition;
and (iii) deliberately and voluntarily chose to expose himself to the danger
in such a manner to register assent on the continuance of the dangerous
condition.

M ISS. C ODE A NN. § 11-1-63.

"Often the question of whether the plaintiff appreciated and understood the

risk is a question of fact for the jury, however, 'in certain circumstances the facts may

show as a matter of law that the plaintiff understood and appreciated the danger.'"

*Green v. Allendale Planting Co.*, 954 So. 2d 1032, 1041 (Miss. 2007) (*quoting Herod v.

Grant*, 262 So. 2d 781, 783 (Miss. 1972)). The Court is of the opinion that such

circumstances are not present here.

In *Clark v. Brass Eagle, Inc.*, 866 So. 2d 456 (Miss. 2004), upon which

Defendants rely, the Mississippi Supreme Court affirmed the trial court's grant of

summary judgment where the plaintiff, who was not wearing protective eye gear,

sustained an eye injury from a paintball gun while engaged in a "paintball war."

Based upon the record evidence, the Court there found that the plaintiff knew and

understood the danger in shooting paintguns, as the plaintiff had testified that it was

"common sense" not to shoot anyone in the face.  *Id*. at 461.  The Court also

determined that "Clark offered no proof that the paintball gun used in the incident

-7-

*failed to function as expected . . . .*"  *Id* (emphasis added).

The facts of this case are distinguishable from those in *Clark*.  Here, there is no dispute that Plaintiff was not wearing safety goggles or any other eye protection at the time of the accident, Pl.'s Dep. at p. 157, attached as Ex. "A" to Defs.' Mot. for Par. Summ. J., and that he was familiar with the use of table saws, *id*. at pp. 114-16. While the record evidence reflects that Plaintiff understood that table saws were inherently dangerous, *id*. at p. 126, and that wood, saw dust, and other debris could be thrown into the air, *id*. at pp. 128-29, he was not aware that the carbide tip could separate from the saw's blade and injure him, *id*. at p. 128.  Based upon the facts of this case and the relevant Mississippi law, questions of fact remain on the issue of assumption of risk, and summary judgment is not appropriate.

D.    Motion for Partial Summary Judgment

Defendants alternatively move for partial summary judgment on Plaintiff's claims for (1) failure to warn pursuant to MISS. CODE ANN. § 11-1-63(a)(i)(2); (2) defective design pursuant to MISS. CODE ANN. § 11-1-63(a)(i)(3); and (3) punitive damages pursuant to MISS. CODE ANN. § 11-1-65.  In response, Plaintiff contests that summary judgment on these claims is appropriate, and further addresses his breach of warranty claim under MISS. CODE ANN. § 11-1-63(a)(i)(4).

1.    *Inadequate Warning Claim Under MISS. CODE ANN. § 11-1-63(a)(i)(2)*

The MPLA provides that:

(c)(i)    In any action alleging that a product is defective because it failed to
          contain adequate warnings or instructions pursuant to paragraph
          (a)(i)2 of this section, the manufacturer or seller shall not be liable

if the claimant does not prove by the preponderance of the evidence that at the time the product left the control of the manufacturer or seller, the manufacturer or seller knew or in light of reasonably available knowledge should have known about the danger that caused the damage for which recovery is sought and that the ordinary user or consumer would not realize its dangerous condition.

(ii) An adequate product warning or instruction is one that a reasonably prudent person in the same or similar circumstances would have provided with respect to the danger and that communicates sufficient information on the dangers and safe use of the product, taking into account the characteristics of, and the ordinary knowledge common to an ordinary consumer who purchases the product. . . .

MISS. CODE ANN. § 11-1-63.

"In Mississippi, a warning may be held adequate as a matter of law where the adverse effect was one that the manufacturer specifically warned against." *Austin v. Will-Burt Co.*, 361 F.3d 862, 868 (5th Cir. 2004) (*citing Cather v. Catheter Tech. Corp.*, 753 F. Supp. 634, 640 (S.D. Miss. 1991)). A key element of causation in a failure-to-warn claim under Mississippi law "is proof of a causal link between the plaintiffs' injuries and the product's allegedly lacking a warning or having an inadequate warning. In other words, the failure to warn must be the proximate cause of the injuries suffered or it is irrelevant." *3M Co. v. Johnson*, 895 So. 2d 151, 166 (Miss. 2005). Where the warning has not been read, the adequacy of the warning cannot proximately cause a plaintiff's damages. *See Palmer v. Volkswagen of America, Inc.*, 904 So. 2d 1077, 1084 (Miss. 2005) ("Having not read the manual, the [plaintiffs] would not have 'noticed and heeded an alternative warning,' an adequate warning, the picture, or anything else in the manu-al [sic]."). Here, both the saw and operator's manual contain multiple warnings.

a.    *Warnings in the Manual*

The operator's manual includes multiple warnings cautioning that the user should read and understand the manual, including its warnings, before operating the saw.  Operator's Manual at pp. 1,3, 4, attached as Ex. "H" to Defs.' Mot. for Part. Summ. J.  The manual also contains specific warnings about the need to wear proper eye protection.  Among them is a warning with a graphic depicting a user wearing protective eye goggles and stating that:

> **! WARNING:**
>
> The operation of any power tool can result in foreign objects being thrown into your eyes, which can result in severe eye damage.  Before beginning tool operation, always wear safety goggles or safety glasses with side shields and a full face shield when needed.  We recommend Wide Vision Safety Mask for use over eyeglasses or standard safety glasses with side shields.  Always wear eye protection which is marked to comply with ANSI Z87.1.

*Id*. at p. 3.  In another location, the operator's manual advises that the user should:

  •    ALWAYS WEAR SAFETY GLASSES WITH SIDE SHIELDS. Everyday eyeglasses have only impact resistant lenses; they are NOT safety glasses.

*Id*. at p. 4.

Plaintiff maintains that these warnings did not comply with American National Standards Institute (ANSI) standards.  He contends that the warnings did not alert users to the specific hazard involved, namely that a carbide tip could come off the blade during operation, but instead only instructed that the hazard could be avoided by wearing safety goggles.  Pl.'s Revised Opp'n, at p. 20.

The Court is not persuaded by this argument and concludes that the warnings

-10-

provided adequately advised Plaintiff of the danger of the very injury of which he now complains.  Specifically, Plaintiff was warned that "foreign objects" could be thrown into his eyes, resulting in "severe eye damage" if the proper eye protection was not worn.  *See, e.g.*, *Austin*, 361 F.3d at 868 (finding warnings on a telescoping mast sufficient where they connected contact with power lines and risk of death); *see also, e.g.*, *Harris v. International Truck and Engine Corp.*, 912 So. 2d 1101, 1108 (Miss. Ct. App. 2005) (finding a warning adequate where implicit in the manual's instruction to take the vehicle to one of the defendant's trained mechanics for repairs, was a warning that repair tasks were beyond the consumer's ability to perform and that if such attempts were made, dire consequences could result).

Plaintiff testified at his deposition that, because many were "common sense," he did not read the aforementioned warnings contained in the owner's manual.  Pl.'s Dep. at pp. 125, 127, attached as Ex. "A" to Defs.' Mot. for Part. Summ. J [176].  That Plaintiff would have noticed and heeded an alternative warning, *i.e.*, a more visible warning, ignores the fact that the record evidence supports the conclusion that Plaintiff did not read the warnings provided.  *See, e.g.*, *Palmer*, 904 So. 2d at 1083. The "presence or absence of anything in an unread owner's manual simply cannot proximately cause a plaintiff's damages."  *Id*.

Though Plaintiff maintains that he read a portion of the manual pertaining to assembly of the saw, he undisputedly did not read the warnings contained in the manual.  Pl.'s Dep. at p. 123-25.  Upon review of the manual, the subject warnings do not appear in the "Assembly" section.  Operator's Manual, attached as Ex. "H" to

Defs.' Mot. for Part. Summ. J.  Nor has Plaintiff offered any argument or evidence that he was somehow prevented from reading the warnings provided in the manual. Instead, he testified that he did not read the warnings because they were common sense.  *See, e.g.*, *McSwain v. Sunrise Medical, Inc.*, 689 F. Supp. 2d 835, 844 (S.D. Miss. 2010) ("nothing prevented [the plaintiff] from reading the warnings in the manual except his own belief that he did not need to read the manual based on his prior experience.").

Nor does Plaintiff contend that he would have acted upon a warning cautioning against the separation of the blade's carbide tips in such a manner that would have avoided his injuries.  *See, e.g.*, *3M Co. v. Johnson*, 895 So. 2d 151, 166 (Miss. 2005) (granting judgment as a matter of law where the plaintiffs failed to demonstrate that some other warning would have given them additional information that they did not already know and that they would have acted upon that new information in a manner that would have avoided the injuries).  To the contrary, Plaintiff argues that "[e]ven if the Plaintiff had been wearing the better grade of safety glasses, the carbide tip would most likely have passed below the bottom edge of the glasses and entered his right eye anyway. . . ."[1]  Pl.'s Revised Opp'n at p. 5.  Plaintiff has not shown an inadequate warning claim with regard to the warnings found in the manual.

---

[1]  In support of this argument, Plaintiff cites to Dr. Greg Bertucci's Report, which is attached as Exhibit "H" to Plaintiff's Opposition.  By previous Order [258], the Court has excluded Dr. Bertucci's opinion that Plaintiff would have sustained his injury regardless of whether he was wearing safety glasses.  Ct. Order [258] at pp. 17-19.

b.    *Warnings on the Saw*

The saw itself has a warning sticker adjacent to the power switch which states:

**! WARNING**

- **To reduce the risk of injury, user must read and understand operator's manual.**
- **Wear eye protection**.

Saw Warning Label, attached as Ex. "C" to Defs.' Mot. Part. Summ. J.  Another warning on the side of the saw reads:

**! WARNING**

**For Safe Operation, Read and Understand Operator's Manual Before Using Tool.**

Serial Plate Warning, attached as Ex. "F" to Defs.' Mot. for Part. Summ. J.

Plaintiff maintains that the warnings on the saw were also inadequate for failing to comply with ANSI standards, in that they did not alert the user to the hazard involved or describe the "degree of hazard consequences."  Pl.'s Revised Opp'n at 20.  The Court has determined that the warnings contained in the manual were adequate.  "The MPLA does not expressly require consideration of the placement of a warning in determining its adequacy, nor do the parties cite any cases that support consideration of the warning's placement."  *McSwain*, 689 F. Supp. 2d at 843.  Plaintiff has not directed the Court to, nor has the Court been able to locate, any record evidence that he ever read the written eye protection warning on the saw, or that he was somehow prevented from reading it.  Nor has Plaintiff presented evidence that had an adequate warning been provided, he would have read and heeded it, thus preventing his injury.  *See, e.g.*, *Harris*, 912 So. 2d at 1109-10 (Miss. Ct. App. 2005)

-13-

(finding that a plaintiff, to support an inadequate warning claim, is not entitled to a heeding presumption, but must prove "if adequate instructions and warnings had been given, he . . . would have read and heeded them."); *see also, e.g.*, *3M Co.*, 895 So. 2d at 166 (requiring that plaintiffs demonstrate that they would have acted upon new information in a warning that would have avoided their injuries).

Based upon the foregoing, the Court concludes that Plaintiff's inadequate warning claim cannot survive summary judgment.

2.    *Design Defect Claim Under* MISS. CODE ANN. *§ 11-1-63(a)(i)(3)*

As a threshold matter, Defendants argue that Plaintiff does not advance a claim for design defect in his First Amended Complaint.  Though the Court is skeptical that Plaintiff's First Amended Complaint comports with the pleading requirements of Federal Rule of Civil Procedure 8(a), even assuming it does the Court finds that Defendants are nevertheless entitled to judgment as a matter of law on this claim.

> In order for a manufacturer to be found liable for a design defect, the [MPLA] requires the plaintiff to show there existed a feasible design alternative that "would have to a reasonable probability prevented the harm" and that it "knew, or in the light of reasonably available knowledge or in the exercise of reasonable care should have known, about the danger that caused the damage for which recovery is sought."

*Wolf v. Stanley Works*, 757 So. 2d 316, 322 (Miss. Ct. App. 2000) (*quoting* MISS. CODE ANN. § 11-1-63(f)).  "[D]emonstrating a feasible alternative design as proof of a design defect is elemental to a claimant's prima facie case.*" Williams v. Bennett*, 921 So. 2d 1269, 1275 (Miss. 2006).  "[O]nce sufficient evidence has been presented to the judge so the judge can determine that reasonable people could conclude a reasonable

alternative design could have been practically adopted, the issue can be entrusted to a trier of fact." *Id.*

"Expert testimony is generally necessary to prove a product was defective *at least* as to design and manufacture under section 11-1-63, . . ." *McIntosh v. Nissan North America, Inc.*, No. 3:07cv60, 2008 WL 4793743, at *3 (S.D. Miss. Oct. 28, 2008) (emphasis in original); *see also Williams*, 921 So. 2d at 1275 ("It follows that the mere mention of a design alternative by an expert comes well-short of lending evidentiary guidance to a court.").  Here, Defendants aver that without an expert to opine on the issue, Plaintiff's claim for design defect cannot survive summary judgment.  Plaintiff has not pointed the Court to any expert opinion or other competent summary judgment evidence in support of this particular claim, instead offering the unsupported argument of counsel that there existed an alternative design that would have prevented Plaintiff's injury.  "Allegations and attorney arguments without supporting evidence are not sufficient to preclude summary judgment." *Condon v. Wood Group Logging Services, Inc.*, No. H-06-2193, 2007 WL 2330131, at *8 (S.D. Tex. Aug. 14, 2007) (*citing Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 n. 9 (1981)).  Summary judgment is appropriate on this claim.

     *3.*     *Breach of Warranty Claim Under MISS. CODE ANN. § 11-1-63(a)(i)(4)*

Defendants argue in their Reply that, for the first time, Plaintiff asserts a breach of warranty claim pursuant to MISS. CODE ANN. § 11-1-63(a)(i)(4) in his Opposition to their Motion for Partial Summary Judgment.  Upon review of the First Amended Complaint, the Court is not persuaded that Plaintiff sufficiently pled this

-15-

claim pursuant to Federal Rule of Civil Procedure 8(a).  Even if the claim were properly pled, Plaintiff fails to state a breach of warranty claim as a matter of law.

Under the MPLA, a claimant must prove that "the product breached an express warranty or failed to conform to other express factual representations upon which the claimant justifiably relied in electing to use the product."  MISS. CODE ANN. § 11-1-63(a)(i)(4).  Insufficient summary judgment evidence has been submitted that Plaintiff relied on any warranties made by Defendants.  There is no serious dispute that Plaintiff did not read any warranties provided in the owner's Manual, *see* Pl.'s Revised Opp'n at p. 25 ("The fact that Plaintiff did not read the manual's warranty provisions should not affect his claim . . . . No one reads the warranties that come with products they buy . . . ."), and aside from the unsupported argument of his counsel, there is no evidence that either Plaintiff or the saw's original owner relied upon any express representations made by Defendants.  "Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial."  *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002).

Based upon the record before the Court, summary judgment on this particular claim is appropriate.  *See, e.g.*, *McSwain v. Sunrise Medical, Inc.*, 689 F. Supp. 2d 835, 848 (S.D. Miss. 2010) (granting summary judgment on plaintiff's breach of warranty claim under the MPLA where plaintiff had not presented any evidence that defendant made an express representation or that he relied on any information from the

defendant); *compare Forbes v. Gen'l Motors Corp.*, 935 So. 2d 869, 875 (Miss. 2006) (finding that the manufacturer could be liable for having breached an express warranty, even though consumer never read warranty in owner's manual, where automobile salesman conveyed the express warranty to the consumer and consumer relied upon that representation).

    *4.    Punitive Damages Claim Under* MISS. CODE ANN. *§ 11-1-65*

    Plaintiff asserts that "Defendants' acts and omissions . . . were done with a wanton and willful disregard of the rights and safety of others," and that Plaintiff is therefore entitled to recover punitive damages in the amount of $2,000,000. Am. Compl. MISS. CODE ANN. § 11-1-65(a) states that:

> [p]unitive damages may not be awarded if the claimant does not prove by clear and convincing evidence that the defendant against whom punitive damages are sought acted with actual malice, gross negligence, which evidences a willful, wanton or reckless disregard for the safety of others, or committed actual fraud.

MISS. CODE ANN. § 11-1-65(a).

    Plaintiff argues that punitive damages are warranted on grounds that Defendants "fail[ed] to conduct any investigation, testing, research, or study whatsoever regarding the nature, composition, or quality of the carbide tips and blades supplied with their table saws," Pl.'s Revised Opp'n at p. 26, and because Defendants utilized a specific carbide tip since it was cheaper, *id*. at 27. Plaintiff also asserts that Defendants were grossly negligent by failing to perform a hazard analysis. *Id*.

    In support of his position that Defendants failed to conduct any testing on the

blade tip, Plaintiff directs the Court to in excess of one hundred and fifty pages of the deposition of One World's FED. R. CIV. P. 30(b)(6) representative.  As a threshold matter, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003)  (*quoting Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)).

However, even taking the deposition testimony into account, while the 30(b)(6) representative was unable to point to specific documentation on the actual testing of the particular blade type at issue in this case, 30(b)(6) Deposition at pp. 172-74, attached as Ex. "B" to Pl.'s Revised Opp'n, he testified that all blades were tested on multiple levels and were qualified for use before One World would consider utilizing them, *id*. at pp. 26-28; 67; 88-90; 93-94;110-111; 178-79.

Moreover, the competent summary judgment evidence does not support Plaintiff's contention that One World utilized certain blades simply because they were cheaper.  To the contrary, the 30(b)(6) deponent testified that:

> [y]ou're asking me now, does that mean that these blades are less expensive than a Freud.  No, it does not.  We're saving costs.  Cost is not the price of the blade.  Cost is transportation.  Cost is a lot of different things . . . .So there's a lot more involved in the cost than simply the price of the blade.

*Id*. at pp. 77-78.  Finally, Plaintiff is unable to marshal sufficient summary judgment evidence that Defendants failed to perform a hazard analysis in the manufacturing design process.  Plaintiff relies upon testimony from his expert, Andrew LeCocq for this position.  By previous Order [258], however, this Court excluded LeCocq's

testimony pertaining to Defendants' performance of a hazard analysis.  Ct. Order [258] at pp. 5-6.

Based upon the foregoing, the Court concludes that the record does not contain sufficient evidence, much less clear and convincing evidence, that Defendants "acted with actual malice, gross negligence, which evidences a willful, wanton or reckless disregard for the safety of others, or committed actual fraud."  MISS. CODE ANN. § 11-1-65(a).  Plaintiff's claim for punitive damages cannot withstand summary judgment.

## III.  CONCLUSION

Viewing the evidence in the light most favorable to Plaintiff, and resolving all factual disputes in his favor, the Court finds that Defendants' Motion for Summary Judgment should be denied.  Defendants' Motion for Partial Summary Judgment should, however, be granted as to Plaintiff's inadequate warning, defective design, and breach of warranty claims under the MPLA, and also as to Plaintiff's punitive damages claim.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, the Motion for Summary Judgment [176], filed by Defendants One World Technologies, Inc., and Ryobi Technologies, Inc., on July 15, 2010, in the above captioned case, should be and hereby is **DENIED**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, the Motion for Partial Summary Judgment [178], filed by Defendants One World Technologies, Inc., and Ryobi Technologies, Inc., on July 16, 2010, in the above captioned case, should be and hereby is **GRANTED**.  Summary judgment is granted on Plaintiff's inadequate

-19-

warning, defective design, and breach of warranty claims under the Mississippi Product Liability Act, MISS. CODE ANN. § 11-1-63, and further granted as to Plaintiff's punitive damages claim.  These claims are dismissed with prejudice.  The only claim remaining for trial under the Mississippi Product Liability Act, to the extent it has been asserted, is a manufacturing defect claim pursuant to MISS. CODE ANN. § 11-1-63(a)(i)(1).

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, Plaintiff's claims against Defendant Techtronics, Inc., are dismissed with prejudice, as it has been improperly joined in this matter.

**SO ORDERED AND ADJUDGED**, this the 14th day of January, 2011.

*s/ Halil Suleyman Ozerden*

HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE